May it please the court, counsel, ladies and gentlemen of the audience, I also wish to take a brief moment to introduce the court to the petitioner's mother, who is present in the first row. We welcome them to her court. Your Honor, this case is before this court on a petition for review from the BIA's denial of my client's request for withholding of removal. He was placed into withholding of removal only proceedings by the Department of Homeland Security after having re-entered the United States after prior removal. The impetus for his re-entry into the United States was the persecution he suffered at the hands of the Mexican government, Mexican officials, soldiers, and police in two incidents in March 2014 and August 2014. These incidents occurred due to my client's faith, namely his belief and adherence to the Santa Muerte faith. As a part of his practice of his faith, he would make prayers to Santa Muerte, and in those he would promise, should what he requested come true or what he desired come to pass, he would be tattooed. The record shows in Volume 2, pages 591-592, he had significant, very large Santa Muerte-related tattoos. This religion, its symbols, its iconography is known, especially in northern Mexico near the border, to be part of the Santa Muerte faith. This is, in Mexico, for right or for wrong, linked to drug cartels and is disparaged. Additionally, the Mexican government had declared war on the faith, bulldozing and destroying its shrines and oppressing its people. We submit that one of the reasons he was persecuted was because of his faith. The question before the court is, is it a one central reason or a reason? We submit that in the Ninth Circuit, when they decided the Barajas, that it is a reason. The Congress, in going back and modifying the asylum statute, which is not applicable in this case, modified it to one central reason. That issue, the government contends, we never raised before the board and before the agency. However, on page 19 of Volume 1, we did raise the mixed reason issue before the agency. The board did not address that issue, but we did raise the issue.  Furthermore, pursuant to Vasquez-Velezmo, this court decided that it has jurisdiction to decide what it has jurisdiction. Your colleague is going to tell me that the reference to the Ninth Circuit Court was not raised below, is that correct? That's correct, because that case was decided after the board made its final decision. Have the other circuits gone the other way? What is the case law on the issue? Is the Ninth Circuit the only one? To my knowledge, yes, Your Honor, the Ninth Circuit. Isn't that unusual for the Ninth Circuit to be the only one? Not necessarily. No, the answer is no. Well, I shouldn't use the word intriguing, it's an interesting issue. Yes, it is. Congress changed only the asylum statute. Withholding and cat relief have a much higher substantial burden of proof. You have to prove it's more likely than not the applicant would be persecuted on one of the five grounds enumerated in the statute. Less so with asylum, you have a lesser burden. So, a reason, it might be it's a lower burden for proving the nexus of harm, but you have a higher burden of proof. And so, plain meaning statutory interpretation, Congress presumably knows what's in its statutes, and it chose only to amend the asylum law. It chose not to amend the withholding or torture convention relief statutes. And so, based on that plain meaning and canons of statutory interpretation, the court should see that it wasn't amended. If Congress wants to amend this, and it disagrees with the court's decision that we would request the court make that it is the a reason standard, not one central reason standard, Congress can go back and amend the statute. That's their prerogative. But, as the statutes are read, the statute says a reason. And, it is clear, I think the court looked in the March 2014, it said it was clearly the nexus between the petitioner's faith and the harm was there. The question whether the nexus was there or not occurred in the August 2014 incident where the petitioner was handcuffed, beaten, his tongue was threatened to be cut out, and he was waterboarded by the Mexican government. In that instance, there were some other people being arrested who pointed to him and said, oh, he's a drug dealer. They did not know him. They presumed he was a drug dealer. Why? Based on his predominant Santa Muerte-related tattoos. There's some evidence, though, that others that belong to the same group were not assaulted or anything. Is that correct? And those others did not have the visible tattoos. He had the visible tattoos as a practice of his faith. If, for example, a Rastafarian were walking by with dreadlocks, they could have said, hey, he's a drug dealer because he has the dreadlocks, just to analogize. So, it is our display of his faith that led to the presumption of being a drug dealer. And even when you read his testimony, the Mexican officials said, look at the tattoos that you have, not look at, they didn't say, look, you have tattoos. They said, look at those tattoos that you have, which would leave a reasonable trier of fact to say they were referencing the Santa Muerte tattoos. In the exhibit, his tattoos took the majority of a part of an arm, as opposed to, I think in his testimony, he had one non-religious tattoo, which was maybe a couple of inches in size, as opposed to the length of the arm. And so logic would dictate that they were referring to his Santa Muerte faith. And, you know, if the record before the court must compel that a protected ground was the motivation for the persecution, as it was in this case, then this decision must be reversed, the board's decision must be reversed. I think it's very clear that the protected ground, his religion, was the motivation of the Mexican authorities. And because of this persecution of him, of the waterboarding, of being beaten with a gun, he suffered significant psychological, physical harm as a result of this. And even if this court were to defer to the other standards on account of the higher burden of proving the persecution nexus, of course, the decision Borjas, B-I-N-S, states, on account of not necessarily being one ground that he was a drug dealer or accused of being a drug dealer, it was also a central reason that he had his tattoos reflecting his faith. And furthermore, the board and the IJ did not look at these two instances regarding the nexus in the aggregate. The first one was clearly on account of his faith. They said, look, you have Santa Marte tattoos. If they looked at the August one, you have the same region, same area, same actor, causing the persecution, and they say, look at those tattoos that you have. Presumably, a reasonable trier of fact would conclude they were referencing his larger Santa Marte tattoos rather than his one singular minor, non-related Santa Marte tattoo. Are there no further questions? I would assume not. I believe they did. Well, we'll find out. I believe we raised it to the board. We raised the mixed message issue with one of the enumerated questions in our brief to the board. The reason I brought it up now is I thought you might run out of rebuttal time, and I didn't want you to address it as clearly as you could. I did raise the mixed message, I'm sorry, mixed cause regarding the nexus point was included before the board. I did not specifically cite the Ninth Circuit case. The Ninth Circuit case had not been decided or existed. It's pretty hard to cite something that hasn't occurred. Right. Thank you. And you'll reserve the rest of your time for rebuttal. If there are no other questions. Thank you. Thank you. We'll hear from the government. Good morning, your honors. Good morning, Ms. Tyler. Is it Ms. Tyler? Yes, it is. And you may proceed. May it please the court. I'd like to begin my remarks with the first issue that Petitioner's Counsel raised. It's quite clear that Mr. Moctezuma did not exhaust his new claim that the agency applied the wrong nexus standard to his request for withholding of removal. Now, Petitioner's Counsel argued this morning that he raised the mixed motive standard, but the mixed motive standard is not the same thing as raising what standard applies in a mixed motive case. It is fairly clear that the board approached this case as a mixed motive case. The question is, what is the standard that applies to a mixed motive case? And under the statute, and under board precedent matter of CTL, and under Third Circuit precedent, that is Gonzales-Posadas, the issue of what the burden is under a mixed motive case has been decided. And it is one central reason. This court also, Judge Woolman and Lucas B. Lynch, a case implicating withholding only, you agreed that the one central reason standard applied to mixed motive cases. Other panels of this court have determined that in mixed motive cases, it is one central reason, not simply a reason. Now, not only, he's basically arguing that a less rigorous standard should apply. And that argument certainly was never made below. In fact, he argued the opposite below to the board. He conceded that matter of CTL controlled and said that in a withholding of removal case, the applicant bears the burden to show that he suffered past persecution and established that one of the five protected grounds was or will be at least one central reason for persecuting the applicant. I'd also like to address his argument that Barajas had not been decided as of the time that he filed his brief. The board's decision in this case was issued on November 21, 2016. Barajas was issued on January 18, 2017. But he was at liberty to file a motion to reopen with the board, arguing that Barajas should be addressed. He admits in his reply brief that he did not exhaust this issue before the board. He simply claims that he is doing so in light of the Ninth Circuit's decision in Barajas. But he makes no argument in his opening brief or his reply brief why this court has jurisdiction over an unexhausted issue or why this court's court-imposed exhaustion requirements should be lifted. Or why it's a unique circumstance. And I believe that not only has the issue not been exhausted, but by failing to address in his opening brief the fact that he is raising an unexhausted issue and not arguing to this court at any point in either his first or second briefs, why this court has jurisdiction over an unexhausted issue or the court-imposed exhaustion requirement should be overlooked or should be waived in this instance. So you argue that our prior precedent would preclude our addressing the Ninth case? I'm not making that argument, Your Honor. But I'm saying that this is certainly not an appropriate vehicle for this court to re-examine that issue. It really hasn't been fully fleshed out. It has huge operational implications for the Board of Immigration Appeals. It was not properly addressed. Could we say that it was adequately or tangentially raised and therefore remanded to the Board for consideration of the Ninth Circuit position? I would hope that it would not do so because it was not properly raised and I don't think that this is a proper vehicle for it. And I would just point out that we're not just arguing that there's a different standard that applies. In Barajas, not only did the Ninth Circuit say that we should not apply the one central reason test to withholding matter, they actually determined a new test, which they claimed they were finding in that particular section of 1231B3C. And they were basically plucking language from B3C and saying, actually what Congress meant to do was not apply one central reason but apply any reason, which directly goes against legislative intent provided in the Real ID Act, which is that Congress wanted to overrule Ninth Circuit decisions Briones and Borjas, which basically lessened the causation standard. So to allow any reason that is articulated to be a causal reason. And that's a very troubling conclusion. So at a minimum, this litigant should have, the argument was there whether Barajas had been decided or not. Presumably Barajas wasn't the first person to come up with this argument either, but he did make it. And it was incumbent upon this petitioner to go to the board and say that not only does the one central reason not apply, but that the board should start applying a reason, as the petitioner in Barajas argued. This petitioner did not do that. And this is not the appropriate vehicle for remand or for this court to decide. And what are the prudential reasons for not doing that? I mean, it's not as though the board has a vested interest in any rule of law, does it? It has to follow the law and interpretation. It is, of course. I'll interrupt you, I'm sorry. No, go ahead. What was Congress's motivation in changing the law? Congress inserted the one central reason text. To overrule a Ninth Circuit case? I'm sorry? To overrule a Ninth Circuit case? To overrule two cases. I'm sorry I don't have the citations in front of me, but Briones, B-R-I-O-N-E-S, and Borja, in which the Ninth Circuit substantially undermined the proper analysis of mixed motive cases. And that's actually in the legislative history of the Real ID Act. You're too much of a diplomatic lawyer to say that the current Bras decision is an end run by the district court in the Ninth Circuit? I am. I am far too diplomatic to say that. I know you may think that. Certainly, in matter of CTL, the board addresses why the Real ID was changed the way it was and why the board believes that it was never intended for a different standard to apply in terms of causation for withholding of removal than for asylum. Now, for example, the Ninth Circuit in Barajas state mused, in a sense, that Congress meant to offset the higher likelihood of persecution requirement, which is clear probability, it's not well-founded fear, in the withholding statute by retaining a lower nexus standard. But this notion has absolutely no support in the legislative history and has the potential to upend tens of thousands of cases that have applied the higher standard across the board. This has huge operational implications. We're basically talking about tens of thousands of motions to reopen where the one central reason standard was applied. I guess you don't deal with criminal cases, but would it be the equivalent squared of Johnson, the Johnson and Mathis cases in the Armed Career Criminal Act? Similar. I mean, it's an entirely new way of looking at... And I would also draw your attention to the fact that under PREACT Law and currently, both the asylum and withholding motive standards are the same. Under 1231b3a, it requires that an alien prove that his life or freedom is threatened because of the alien's race, religion, nationality, particular social group, or political opinion. Whereas 8 U.S.C. 1101a42a defines the refugee for the purposes of asylum as someone suffering persecution on account of. Time and time again, these definitions have been considered the legal equivalent. And to impart a different nexus requirement at this time would be inharmonious and asymmetrical, which is exactly what the Congress didn't want to do. They were trying to inject harmony and symmetry into mixed motive cases. I'd be happy to go, if you have any other questions about exhaustion, waiver... Maybe we should go to the merits. The merits, which I do believe are critical in this case. Let me just figure out where I'm going to pick up. Just to address quickly one comment that Petitioner's Counsel made, that the board failed to address and the immigration judge failed to address causation in the aggregate. I think actually there was a remand in this case because the board wanted the immigration judge to address these issues in the aggregate, and that's exactly what the immigration judge did. And the board did it as well. What they found, they upheld the immigration judge's finding that the March 2014 incident did not rise to the level of persecution. And that is something that the petitioner has not contested in any of his briefs. But then the board went on to say, and we believe that it was reasonable for the board to conclude, that the one unrelated incident of March 2014 did not bridge the evidentiary gap of attributing nexus from one incident to the second incident. Now, he calls these related incidents. I think the government would maintain they're not. They were not the same actor. He was very clear that in March of 2014 he was beaten by Mexican soldiers. In August of 2014 he was beaten by the federal police. These were not related temporally. They took place five months apart. The only thing that's really common, that these incidents have in common, is that on both occasions Mr. Moctezuma walked into a drug interdiction. In March of 2014 his evidence reflects that he saw four vans full of eight Mexican soldiers each on the street and he decided to walk through there. He said, I just decided to go through there. And this is in the record at 394. So, again in August of 2014, he sees two vans of federal police and he said where they were having an operation and I decided to walk through where the police were and they grabbed me. And we don't have to do, there's no guesswork really involved in why he was pulled over and mistreated in August of 2014. He was, the agents, not only did he walk into the area where this drug interdiction was going on, one might say unadvisedly. Secondly, it was explained. The agents told him why they stopped him. They stopped him and pulled him into the cemetery because one of the men who was already on the ground and had already been beaten had identified him as the ringleader, as the main drug agent. How about the tattoos? Well, in that particular incident, in August of 2014, the tattoos were not referenced until he was already on the ground and had already been beaten. And he was saying, it's not me, it's not me, I'm not the drug agent. And I believe in response to that, there was a very ambiguous reference to the tattoos. The language at the record 396 is, look at yourself, you are all full of tattoos, look at the tattoos you have. Now in Latin America, tattoos and being adorned with many tattoos, lots of sleeves, very large, are inextricably linked with criminal activity. So just because you have tattoos doesn't mean you're Santa Muerte. Just because you have tattoos doesn't mean the police officer knows they're Santa Muerte tattoos. And again, petitioner did reference in the record, they are in the record at page 591 to 593. They are not anything, Santa Muerte is a skull in a wedding dress. I don't see that in any of these tattoos. So the tattoos may be open to interpretation. He is insisting that for the purposes of causation that these tattoos can only be read one way. Well, the interesting thing about that is that he has, for example, a female Aztec warrior tattoo. The record is full of evidence that Santa Muerte may be related to Aztec culture, it may not. So you're basically asking, you know, envisioned and intended them to be when he got them. And it's also true that he has friends who are Santa Muerte adherents, who are not tattooed, they do not have problems. Well, I think the big critical causal problem there is they don't have tattoos. And in Latin America culture, where tattoos are inextricably linked with criminal activity, it's the having the tattoos, not necessarily what the tattoos are of that makes the difference. There's another piece of evidence that I think that's really critically important here, and that is what happened to Mr. Moctezuma after this incident in August. He remained in Mexico for three additional months and had no further problems. Now, he said he went out every day. He said that he, and infrequently at night, there was no indication that his tattoos were covered. And he had no difficulty. But what he didn't do, and this is his own testimony, is he said that after the August 2014 incident, he, rather than walking up to police vans where they were having an operation, I decided to avoid them. I see my time has expired. If there's no further questions, I appreciate your time. No, we thank you for your time. Thank you. Mr. Nielsen, you have some rebuttal, I see. Yes, Your Honor. Thank you very much. I'll take this in reverse order. Counsel for the government referred to his Aztec warrior tattoo. That tattoo is on his leg. It's not on his arms. He testified he was wearing a T-shirt at the time. The visible tattoos in the record 591 through 593 are on his arms. They're the visible ones. The immigration judge made reference at one point that he could walk around covering his body. That's not the point. He should be able to walk around and express his religious. He was persecuted walking around with an outward silence of religious expression. It's the same as if someone had been jumped. The priest had been jumped wearing his vestments. Or, like I mentioned earlier, the Rastafarian example. Next, the government points to the speculative tens of thousands of motions to reopen the case. The court relying on the a reason, not any reason, a reason, not any reason, a standard would produce. That's speculation. For example, the Supreme Court after Padilla decided Chavez, which decided that was a new rule and thus didn't apply retroactively. That could happen in this instance as well. So it doesn't necessarily, the court, if it were to apply a reason as the standard, it does not necessarily mean we open the floodgates of litigation. I suppose you could respond with a Latin. I can't do Latin, but let justice prevail, though the heavens fall. Correct, exactly. Again, I would point to, I did raise the issue, I did not cite the case that that does not exist at this time. If this court would like the board to consider it, it's free to ask for remand. In other words, you haven't asked for that, and so it's, what, idle speculation on my part to suggest it? Or you don't have to characterize it that way? No. If the court would want to remand it, it's free to do so. Also, the court is free to consider and take jurisdiction pursuant to Vasquez-Belismo. I don't believe the tattoos were tangentially related. Not in any way. The board did remand for consideration in the aggregate of something the Council for the Government referenced. Yes, for the persecution part, not on the nexus issue. They did not consider the aggregate circumstances of the nexus issue. The IJ did. It was the finding of persecution. The initial decision from the IJ found no persecution whatsoever. The board remanded for consideration in the aggregate. The subsequent IJ found persecution in the aggregate, found nexus in the March 14th incident. But because the March 14th incident in and of itself did not rise to persecution, it denied relief. It did not look at the aggregate nexus. Council points that there are different actors. They're enforcing the drug laws of Mexico. They work cohesively as a unit, the police and the military there. It's my time to explain. We thank you for your argument. The case is now submitted.